# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,       :
*Ex. Rel.* ROBERT R. PURCELL,       :
       :
       Plaintiff,       :       Civil Action No.: 98-2088 (RMU)
       :
       v.       :       Document Nos.: 192, 193, 182
       :
MWI CORPORATION and DAVID ELLER,       :
       :
       Defendants.       :

## <u>MEMORANDUM OPINION</u>

### ADOPTING IN WHOLE MAGISTRATE JUDGE ROBINSON'S REPORT AND RECOMMENDATION; DENYING THE DEFENDANTS' MOTION FOR RECONSIDERATION

## I.   INTRODUCTION

This *qui tam*[1] action involving pump equipment sales to Nigeria comes to the court on the plaintiff's and defendants' objections to Magistrate Judge Deborah Robinson's report and recommendation regarding her order limiting discoverable material.  The defendants have also filed a motion to reconsider Judge Robinson's order denying the defendants' motion to compel production of certain documents and answers to interrogatories.  Robert Purcell (the "relator") brought suit pursuant to the False Claims Act against his former employer, MWI Corporation ("MWI"), a manufacturer of industrial pumps.  The government (the "plaintiff") subsequently intervened, bringing suit on its own accord against MWI and its former president, J. David Eller (collectively, the "defendants").  In August 2004, this court referred the case to Magistrate Judge

---

[1]    *Qui tam* is a convenient short hand for the phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, meaning "who pursues this action on our Lord the King's behalf as well as his own."  *Vermont Agency of Natural Res. v. U.S. ex el. Stevens,* 529 U.S. 765, 769 n.1 (2000).

Robinson for resolution of discovery disputes.  Subsequently, Judge Robinson resolved a variety

of motions regarding the limits of discoverable information.  Judge Robinson issued a report and

recommendation ("R & R") in which she recommends that this court revise part of her previous

order.  Both the plaintiff and the defendants have filed objections to this report and

recommendation.  Because the court wholly accepts Judge Robinson's report and

recommendation regarding her prior order, the court denies the parties' objections.

Meanwhile, Judge Robinson denied the defendants' motion to compel the plaintiff to

produce statements and communications made by the relator to the United States regarding his

allegations against MWI of violations of the False Claims Act.  The defendants now ask this court

to reconsider that ruling.  Because the court finds no clear error in the Magistrate Judge's order,

the court denies the defendants' motion for reconsideration.


## II.    BACKGROUND

### A.    Factual Background

According to the government, in the early 1990s MWI arranged to sell irrigation pumps

and other equipment to seven Nigerian states.  Compl.  ¶¶ 8, 11.  To finance the pump sales, the

United States Export-Import Bank ("ExIm") loaned a total of $74.3 million to Nigeria in 1992 in

eight separate loans.  *Id*. ¶¶ 12-13.  MWI received regular payments through a London bank which

was then reimbursed by ExIm.  *Id*. ¶ 14.

Before ExIm would approve the bank reimbursements, however, it required MWI to

submit a "supplier's certificate" certifying that MWI had not paid any irregular commissions or

other payments in connection with the pump sales.  *Id*. ¶¶ 15-16.  Also, before the bank would

2

release each payment to MWI, MWI had to submit an additional supplier's certificate again certifying that it had not paid irregular commissions or made other payments in connection with the pump sales. *Id.* ¶ 17. Accordingly, MWI submitted supplier's certificates to obtain ExIm approval of the bank reimbursements, and it submitted 48 additional supplier's certificates for each of its payments from the bank. *Id.* ¶¶ 16, 18. On these supplier's certificates, 43 of which were signed by Eller, MWI certified that it had not paid any irregular commissions or made other payments in connection with the pump sales. *Id.* ¶¶ 19, 21.

The government alleges that these certifications were false. *Id.* ¶¶ 24, 35. Specifically, the government claims that the defendants failed to disclose on the supplier's certificates that MWI had paid $28 million in excessive, highly irregular commissions to their Nigerian sales representative, Mr. Alhaji Mohammed Indimi, to obtain the pump sales. *Id.* ¶¶ 22-27. The defendants also allegedly failed to disclose that their representative subsequently made payments to various Nigerian officials in connection with the pump sales. *Id.* ¶¶ 28-37. Finally, the government contends that Eller took trips to the Bahamas and Grand Cayman with cash-filled suitcases in an effort to move his assets out of the United States. *Id.* ¶¶ 38-43.

### B. Procedural Background

On July 21, 2005, this court issued a memorandum opinion setting forth the relevant legal standards at play for the various discovery disputes in this case. Mem. Op. (July 21, 2005) at 8-10. With these guiding principles clearly identified, the court recommitted the discovery disputes in this case to Judge Robinson for reconsideration. *Id.*

Pursuant to that directive, on October 13, 2005, Judge Robinson issued a general discovery order, and on November 14, 2005, Judge Robinson issued a memorandum order denying the

defendants' motion to compel production of documents.  These two orders are now the focus of

the parties' motions for reconsideration.

Because Judge Robinson's October 13, 2005 ruling did not contain her legal reasoning,

this court requested that Judge Robinson issue a report and recommendation to this court as to her

views on the parties' motions for reconsideration of that order.  Order (Feb. 13, 2006).  The court

turns now to the parties' motions.


### III.    ANALYSIS

#### A.    The Court Adopts the Magistrate Judge's June 23, 2006 Report and Recommendation

Magistrate Judge Robinson precluded from discovery information pertaining to "the profit

made by defendants on the transactions at issue in this matter" and "the financial condition of

defendant MWI at any time between 1980 and 1995."  Order (Oct. 13, 2005).  In her R & R as to

that order, Judge Robinson recommends that this court (1) allow discovery of the profit made by

MWI in the transactions at issue in this case but (2) preclude information on the financial

condition of the MWI between 1980 and 1995.  R & R at 8-11.

#### 1.    Legal Standard for Review of Magistrate Judge's Report and Recommendations

"A judge shall make a *de novo* determination of those portions of a magistrate judge's

findings and recommendations to which objection is made[.]"  LcvR 72.3(c) (2001); *Aikens v.

Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997).  In reviewing the magistrate judge's report and

recommendation, a judge may make a determination based solely on the record developed before

the magistrate judge, or may conduct a new hearing and receive further evidence, or recall new

4

witnesses.  LcvR 72.3(c).  A judge may accept, reject, or modify, in whole or in part, the findings

and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge

with instructions.  *Id*.

### 2.    The Profit that MWI Made in the Transactions at issue in this Case are Relevant to the Plaintiff's Unjust Enrichment Claim

Judge Robinson recommends that this court permit discovery of MWI's profits made in

the transactions at issue in this case.  R & R at 8-9.  Under Judge Robinson's assessment, MWI's

profit "is relevant to the United States' claim that Defendants were unjustly enriched by the

conduct alleged in the complaint."  *Id.* at 9.  The defendants object to this element of the

Magistrate Judge's Report and Recommendation, arguing that "the Government admittedly is not

claiming Defendants' profit or 'greater profit,' either as part of its unjust enrichment claim or as

part of any other claim in this case."  Defs.' Objections to R & R at 4.  The defendants' argument

is unconvincing.

Discovery may be obtained by any party if the information sought is "not privileged" and

is "relevant to the claim or defense of any party, including the existence, description, nature,

custody, condition, and location of any books, documents, or other tangible things[.]"  FED. R.

CIV. P. 26(b).  Relevant information includes information that is "reasonably calculated to lead to

the discovery of admissible evidence."  *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189,

194 (D.D.C. 2003); *see also Mitchell v. Amtrak*, 208 F.R.D. 455, 459 (D.D.C. 2002).  The court

has the authority to "confine discovery to the claims and defenses asserted in the pleadings."  FED.

R. CIV. P. 26(b)(1) advisory committee notes.

In determining whether the profit that the defendants made in transactions at issue in this

matter is discoverable, Judge Robinson cited *Miller v. Holzmann*, a case in which the district court

concluded in a *qui tam* action that "[i]f the government can prove that any defendant received a

greater profit [by reason of the alleged false claims], it has a claim for unjust enrichment against

that defendant." *Miller v. Holzmann*, No. 95-1231, 2006 U.S. Dist. LEXIS 9165, *35 (D.D.C.

March 9, 2006).  Similarly here, to prove unjust enrichment, the plaintiff would have to prove that

"it had conferred a legally cognizable benefit upon the defendants." *See United States v. Bouchy*,

860 F. Supp. 890, 894 (D.D.C. 1994).  For this reason, the defendants' profit made in the

transactions at issue in this case is not only "reasonably calculated to lead to the discovery of

admissible evidence," *GFL Advantage Fund, Ltd.*, 216 F.R.D. 194, but it is patently central to the

plaintiffs' claims.  Accordingly, the court adopts Judge Robinson's report and recommendation as

to the defendants' profits made in the transactions at issue in this case.

### 3.   The Defendants' Financial Condition Between 1980 and 1995 is Not Relevant

Judge Robinson recommends that this court affirm her October 13, 2005 order (and

therefore not compel discovery) of "the financial condition of defendant MWI at any time

between 1980 and 1995."  R & R at 9.  Judge Robinson supports this recommendation on the

grounds that this request is not relevant to any of the plaintiff's claims, the plaintiff has not

included any allegations regarding a potential financial motive in its complaint, and there is no

authority to support the proposition that financial motive is an element of the plaintiff's False

Claims Act and unjust enrichment claims.  R & R at 12 (June 23, 2006).  The plaintiff argues that

this information is directly relevant to show motive and knowledge regarding its fraud claim.

Pl.'s Objections to R & R at 4.  In opposition, the defendants argue that "financial motive" is not

relevant to the plaintiff's claims.  Defs.' Opp'n to Pl.'s Objections to R & R at 3.

As discussed above, whether information is relevant depends on whether it includes information that is "reasonably calculated to lead to the discovery of admissible evidence." *GFL Advantage Fund*, 208 F.R.D. at 194.  In this case, the plaintiff seeks information on the defendants' financial situation between 1980 and 1995 to establish that the defendants had a motive to hide the alleged $28 million commission paid to their Nigerian agent to obtain pump sales.  Pl.'s Objections to R & R at 2-3.  Unlike discovery pertaining to the profit that the defendants made from the transaction, this discovery request seeks information outside the scope of this case because these transactions occurred prior to the transactions at issue in this case.  The defendants' financial condition prior to obtaining pump sales in Nigeria does not directly bear on whether the defendants made false representations to the plaintiff regarding commissions paid to their Nigerian agents.[2]  Accordingly, the court adopts the Magistrate Judge's recommendation and holds that this information is not discoverable.

**B.   The Court Denies the Defendants' Motion to Reconsider the Magistrate Judge's November 14, 2005 Order**

On January 13, 2005, the defendants sought discovery of "statements and communications made by the relator to the United States regarding matters asserted in his complaint against MWI alleging violations of the False Claims Act" from the plaintiff and the relator.  Defs.' Mot. to Compel at 1.

---

[2]      This is not to say that in all circumstances, the defendants' financial condition during this time period would not be discoverable.  If, after additional discovery, the plaintiff provides more concrete information establishing a legitimate connection between this discovery claim and the plaintiff's False Claims Act claim, such information may be discovered.  This determination will be made by Judge Robinson as part of the referral in this case.

According to the defendants, this information is relevant because it relates to defendant

Eller's "affirmative defense that the United States' claims [against him] are barred by the statute

of limitations because the government had notice of the potential claims against Mr. Eller when

the relator filed his complaint and accompanying statement of material evidence in August 1998."

*Id.* at 1-2.   The government does not dispute the defendants' assertion of relevance of the

discovery request.  Mem. Order (Nov. 14, 2005) at 2.

In denying the defendant's motion, Judge Robinson concluded principally, and based on a

previous decision of this court, that "in False Claims Act cases in which the government

intervenes, a joint-prosecutorial privilege exists between the government and the relator."  *Id.* at 5

(quoting *United States* ex rel. *Purcell v. MWI Corp.*, 209 F.R.D. 21, 27 (D.D.C. 2002)).  The

defendants take issue with this ruling, arguing that the plaintiff waived the privilege by filing a

statement of material evidence in March 2004.  Defs.' Mot. for Recons. at 4.

### 1.    Legal Standard for Review of Magistrate Judge Decisions

A party may invoke Federal Rule 72(a) and Local Rule 72.2 to seek reconsideration of a

magistrate judge's determination in a discovery dispute.  FED. R. CIV. P. 72(a); LcvR 72.2.  Upon

review, "the magistrate judge's decision is entitled to great deference" and will not be disturbed

"unless found to be clearly erroneous or contrary to the law.'"  *Boca Investerings P'ship v. United*

*States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998)).  "In view of this standard, the court will affirm the

magistrate judge's determination unless 'on the entirety of the evidence' the court 'is left with the

definite and firm conviction that a mistake has been committed.'"  *Neuder v. Batelle Pac. Nw. Nat.*

*Lab.*, 194 F.R.D. 289 (D.D.C. 2000) (citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 365

(1948)); *Arakelian v. Nat'l W. Life Ins. Co.,* 126 F.R.D. 1, 2 (D.D.C. 1989).

**2.    Judge Robinson Properly Denied the Defendants' Motion to Compel
Notes Taken by the Plaintiff During Interviews With the Relator**

As this court held previously in this case, the joint-prosecutorial privilege "applies not
only to communications subject to the attorney-client privilege, but also to communications
protected by the work-product doctrine." *Purcell*, 209 F.R.D. at 11.  And because the joint-
prosecution privilege protects the conversations between the relator and the United States that
touch on the course of the litigation, it can fairly characterized as an outgrowth of the work-
product doctrine.

Judge Robinson denied the defendants' motion to compel discovery of notes that the
plaintiff took during interviews with the relator, Robert Purcell, concluding that these interview
notes were protected by the joint-prosecution privilege.  Mem. Order at 5-6.  The defendants argue
that this information is discoverable because the plaintiffs waived the privilege by voluntarily
providing the Relator's Statement of Material Evidence.  Defs.' Mot. for Recons. at 4-5.

**a.    The Defendants Fail to Demonstrate that the United
States Waived the Joint-Prosecution Privilege**

The defendants argue that the United States waived its privilege by disclosing the relator's
Statement of Material Evidence.  Defs.' Mot. for Recons. at 5.  To the defendants, the interview
notes between the relator and the United States involve the same subject matter as the information
contained in the Statement of Material Facts.  *Id.*  Therefore, the defendants argue, any previously
existing privilege is waived.  *Id.* (citing *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982)).
The defendants' position, in essence, is that disclosure of the Statement of Material Facts
automatically waives the joint-prosecutorial privilege.

The defendants' reliance on *In re Sealed Case* to support their legal assertion is misplaced.

9

In discussing the attorney work product privilege, the circuit court explicitly noted that because it "looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, the work product privilege is not automatically waived by any disclosure to a third party." *In re Sealed Case*, 676 F.2d at 808; *see also Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598 (D.C. Cir. 2001) (refusing to apply a categorical waiver rule of the attorney work-product privilege). In this case, Judge Robinson concluded that the defendants failed to support their contention that the voluntary disclosure of the single document constitutes a complete waiver of the work-product privilege or the joint-prosecutorial privilege. Mem. Order at 5-6. The defendants offer no case law indicating that a complete waiver is in order. For the reasons in Judge Robinson's memorandum opinion, the court will not disturb this determination. *In re Sealed Case*, 676 F.2d at 808.

### b.   The Defendants Fail to Demonstrate Adequate Reasons for the Discovery

The defendants argue that even if the government had not waived the joint-prosecution privilege, they are entitled to the interview notes because they have a "substantial need" for the materials and because it is impossible for them to obtain that information from any other source. Defs.' Mot. for Recons. at 6. In addressing the defendants' concerns, the court considers the standards set forth by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). In that case, the Court noted that in seeking discovery of work product information, the party seeking the discovery must demonstrate an "adequate reason" for why the privilege should yield to discovery production. *Id.* Even more onerous, "to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification." *In Re Sealed Case*, 676 F.2d at

809 (citing *Hickman*, 329 U.S. at 512).  Critical to the instant dispute, the burden for

demonstrating an "adequate reason" or an "extraordinary justification" rests squarely with "the

party seeking discovery."  *Id.*

According to the defendants, the plaintiff's claims against them are barred by the statute of

limitations.  This affirmative defense, the defendants assert, hinges upon on the moment that the

United States learned of Eller's alleged involvement in the scheme – tethered, of course, to the

moment the relator first shared this information with the government.  Defs.' Mot. for Recons. at

7.  To make this argument, the defendants argue, they must have a look at the very information

that the work-product privilege and the joint-prosecution privilege protect – the communications

between the relator and the United States.  *Id.* at 6-7.

Judge Robinson, reviewing the defendants' motion to compel, concluded that the

defendants "have not made a showing of 'substantial need' sufficient to overcome the applicable

privileges."  Mem. Order at 6.  As Judge Robinson explained, the defendants already have the

relator's Statement of Material Evidence and they already have the discovery for which a

"substantial need" has been recognized.  *Id.* (citing *United States* ex rel. *O'Keefe v. McDonnell

Doughas Corp.*, 918 F. Supp. 1338, 1346 (E.D. Mo. 1996)).

Even were the court to agree with the defendants that their need for the information should

override the privilege in this case, a trial court (and here Judge Robinson through this court's

referral) retains broad discretion in deciding the appropriate scope of discovery where a privilege

is involved.  *In Re Sealed Case*, 877 F.2d 976, 981 (D.C. Cir. 1989) (citing *Pierce v. Underwood*,

487 U.S. 552 (1988)); *Boca Investerings P'ship*, 31 F. Supp. 2d at 11 (stating that "the magistrate

judge's decision is entitled to great deference").  This court is unwilling to supplant its reasoning

11

for that of Judge Robinson's, particularly with regard to her factual determinations.  In this instance, Judge Robinson issued her ruling after reviewing the defendants' motion to compel.  And in reviewing this ruling, this court will not assess whether it agrees with Judge Robinson but rather, whether Judge Robinson's ruling was "clearly erroneous or contrary to the law."  *Boca Investerings P'ship*, 31 F. Supp. 2d at 11.

To the defendants, "there is no possible basis for the Magistrate to conclude that Defendants 'already have the discovery for which a 'substantial need has been recognized.'"  Defs.' Mot. for Recons. at 6.  The propriety of Judge Robinson's ruling, however, rests not with her factual findings as such, but with her determination that the defendants failed to meet their burden of demonstrating a substantial need.  Mem. Order at 6 (indicating that the defendants have not made an adequate showing and stating that they have "failed to show that the information which they seek is unavailable from other sources").  Indeed, the court notes that the defendants did not even attach the relator's Statement of Material Evidence to its motion to compel – the one document, it would seem, critical for the defendants to produce in support of their alleged substantial need for the discovery.

Perhaps the defendants are correct to question Judge Robinson's conclusion that the defendants already have the discovery for which a substantial need has been recognized.  And perhaps Judge Robinson meant to say or should have said that the defendants already have *some of* "the discovery for which a 'substantial need' has been recognized."  Mem. Order at 6.

But equally true, by not providing Judge Robinson (or this court in its motion for reconsideration) with the Statement of Material Evidence, the defendants have not provided Judge Robinson with any way to conclude that the defendants *do not* have the information they seek.

Without reviewing the Statement of Material Evidence (which the defendants failed to produce), it is likely that Judge Robinson would have committed clear legal error if she *granted* the defendants' motion to compel.

"The party seeking discovery [must] show 'adequate reasons' why the work product should be subjected to discovery." *In Re Sealed Case*, 676 F.2d at 809 (quoting *Hickman v. Taylor*, 329 U.S. 495 (1947)). Judge Robinson correctly concluded that the defendants have not done so here. The defendants already have the relator's Statement of Material Evidence, which they claim contains the same subject matter as the interview notes. Perhaps the Statement of Material Evidence does not provide the defendants with the information that they are searching for; perhaps legal or practical impediments stand in the way of the defendants obtaining the information they seek through other means. The critical point, however, is that their briefing fails to discharged these options from possibility. And having failed at this task, they have failed to demonstrate to Judge Robinson "adequate reasons" to compel the discovery. *Hickman v. Taylor*, 329 U.S. 495 (1947). For this reasons, the court has no basis to conclude that Judge Robinson's memorandum order is clearly erroneous or contrary to the law. *Boca Investerings P'ship*, 31 F. Supp. 2d at 11. Accordingly, the court is unwilling to disturb Judge Robinson's determination that the defendants have failed to meet their burden.

## IV.    GOVERNING PRINCIPLES ON COURT REVIEW OF THE MAGISTRATE JUDGE'S RULINGS

District judges often call upon the magistrate judges to assist with discovery related matters. By reason of their vast experience in handling such matters, magistrate judges are as

competent as the district judges (if not more competent) to preside over discovery disputes.  This court reviews the magistrate judge's rulings not because this court is better equipped to consider the issue and reach a decision, but because the Local Rules and the Federal Rules of Civil Procedure create a mechanism for district court review.  This court has unqualified trust in Judge Robinson's ability to render discovery rulings in this litigation.

Congress' purpose in creating magistrate judges was to "cull from the ever-growing workload of the United States district judge[.]"  FED. PRAC. & PRO. § 3066 (quoting H.R. Rep. No. 1629, 90th Cong., 2d Sess. 12 (1968)).  Such a purpose is frustrated through ubiquitous review.  Indeed, it is for this reason that "the magistrate judge's decision is entitled to great deference" and will not be disturbed "unless found to be clearly erroneous or contrary to the law.'"  *Boca Investerings P'ship*, 31 F. Supp. 2d at 11.  *De novo* review of the magistrate judge's every move by the district court would sabotage the benefits inherent in the referral.

In this case, a dangerous trend has festered: the parties have challenged Magistrate Judge Robinson's discovery rulings at virtually every turn.  It appears that in most of these instances, the parties do so not because Judge Robinson has acted contrary to the law, but to provide their client with a second bite at the juridical apple.  And in so doing, the parties have dramatically slowed the progress of this litigation and undermined the purpose of the court's referral to Judge Robinson.

In this regard, the court reminds the parties that it will only disturb the magistrate judge's ruling if clearly erroneous or contrary to the law.  The court will scrupulously adhere to this principle.  And without affording the magistrate judge's rulings more deference than currently afforded, the court notes that the parties are no longer free to file motions for reconsideration ad infinitum (and ad nauseam).  The court reminds the parties that for every pleading filed, the

14

attorney certifies that the filing "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  FED. R. CIV. P. 11(b)(1).

It is in this vein that the court directs the parties to read the court's Standing Order, which provides, among other things, that "if the court is called upon to resolve [discovery motions], the losing attorney (not the principal) will be sanctioned pursuant to Federal Rule of Civil Procedure 37(a)(4)."  Standing Order (May 8, 2003) at 5.  By referring this case to Judge Robinson for discovery disputes, the court inadvertently granted to the parties a reprieve from this court's strict application of Federal Rule 37(a)(4).  But from this moment forth, and pursuant to both Federal Rule 37(a)(4) and Rule 11, the court will consider sanctioning the losing attorney in all requests for review of the Magistrate Judge's discovery rulings.  Put simply, the parties may file motions for reconsideration only after painstaking deliberation and measured apprehension.

## V.   CONCLUSION

For the foregoing reasons, the court adopts Magistrate Judge Robinson's June 23, 2006 Report and Recommendation and denies the defendants' motion to reconsider the Magistrate Judge's November 14, 2005 Order.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 25th day of October, 2006.


RICARDO M. URBINA
United States District Judge


15